.com v. AOL Advertising. The sole issue in this case is whether our claims meet the second part of the Alice test. Now, appellees, in a definition adopted by the court, said that the abstract concept here is setting a price based in part on a buyer's participation in an activity. Now our claims are patent eligible because they don't preempt that basic concept. They don't even preempt a small part, a very, very small part of that concept. And the air of the trial court here was in two parts, two related parts. First, the trial court failed to appreciate the strong interrelationship among our limitations and failed to appreciate how that strong interrelationship resulted in a new way of marketing products across the Internet that would engage customers in a new and exciting way. And second, the court applied the ultra-martial decision and other precedents of this court in a way that would result in a rule essentially forbidding the issuance of business patents. So before I begin to talk about the significance of the limitations in our claim to dimension, I think it's important to step back and look at the fact that this invention arose in 1999, the very early days of the Internet, at a time where a lot of what we take for granted about Internet sales just wasn't known. So with that perspective and that context, let's look at the limitations of our claim. It begins at the very beginning with a commitment by the buyer to buy the product at a price within a particular range. So at the very beginning of our process, we have a twist on what would ordinarily be done. That price then is determined by a combination of factors, the auction and the result of a competitive activity involving the buyer. Now, the auction itself is a twist on what went before. The twist is... But all of these are abstract ideas. This is what the court held. I mean, it's like you want a patent because instead of one abstract idea, you put two together and therefore you think it's now patentable. Like one is better than, two is better than one. I mean, not if they're all abstract ideas. That's not what we're doing here, Your Honor. We are not stacking the way the patentee was criticized in Ultramershal. We are interrelating all the different concepts that we've recited to say that... I'm not sure I understand the difference between stacking and interrelating. Yes. For instance, in Ultramershal, there's a patent on marketing or broadcasting copyright material, essentially doing what every broadcast TV channel does. They put on a program and then there are various characteristics about how it's received, how the recipient doesn't pay for the service, but he has to watch commercials instead. And so what the claim did in Ultramershal, even though there are 11 steps in it, it just further recited the characteristics of broadcast TV. Now, in our situation, what we've done is to take the concept of an auction as a way of promoting sales on the internet and combined it with the competitive activity so that unlike the normal auction where you'd expect the high bidder to get the best price, that's not necessarily true here because we combine it with the competitive activity. And the competitive activity isn't something that's normally part of internet sale and it's not a normal competitive activity either. It's one in which the winner of the activity doesn't necessarily get the lowest price. And then we have the further qualification on this, that the product that's being purchased has to be associated with the competitive activity. And we give the Mark McGuire card and trivia quiz as an example. So I think if you were to apply the analysis of Ultramershal to our invention and the patent attorney were to write it in a certain way to take the auction and further recite the characteristics of what we all know an auction to be, then Ultramershal would apply. But it doesn't apply here because that's not what we did. We took different concepts and made them into something that had a much greater significance. And on the question of aren't all these limitations abstract, well, I think that point made by the trial court conflates the two steps of the Alice test. We admit that our claim is to an abstraction. What we don't admit, though, is that it doesn't claim something significantly more than the abstract concept identified by the court. And that abstract concept was basing a price on the result of a competitive activity. We do something significantly more than that. Now, if you say, well, an auction, that's an abstraction too. Well, then there's no two-part test to Alice. It's simply a step where is it abstract, then it's not patentable. Just out of vital curiosity, isn't an auction always a competitive activity? Well, our claim says that the auction has to be distinct from the competitive activity so that you would not have an auction that would meet our limitations, an auction by itself. Our claims require that there be a competitive activity and that there also be an auction that together result in the price to be paid by the customer. So you agree with me? I do agree. Well, I do agree with you, but our claim excludes the possibility of the single auction satisfying both the auction and the competitive activity requirements. So I think the same is also true of the buy safe decision, which is another case relied upon by the appellees here. And that is, there was a notion, the abstract concept there was use of a guarantee across the internet to help secure a sale. And then the limitations merely described what would be involved in the guarantee across the internet. In other words, these were limitations like the ones in Ultramershal that merely could have been authored by the patent attorney in an attempt to make the claim look something that was not. In our case, at the very beginning of the internet, we had a gentleman who was very sophisticated in this technology. And he put together a system that had never been known before. And significantly, during the argument before Judge Andrews in the district court, he said to the attorney for AOL, I've never seen anything like it. And he invited the AOL attorney to identify where this had been done before. And the AOL attorney really didn't reply, made no identification of anything that had been like this before. And the judge continued, well, you would agree with me that if you take all these limitations, it's an incredibly narrow set of circumstances, isn't it? So what he was doing in the oral argument on this motion was to focus on this issue of preemption, which is the issue of the second part of the Alice test. What exactly is the, let's just take Google, what is it the Google's technology that you're accusing? Yes. It is the sale of advertising where the price is set by the combination of two factors. One is an auction that the. And the other is the number of hits. What? And the other is the number of hits that that particular. Exactly. Exactly. So that's what I had understood. One is the auction and one is the competitive activity. And they are combined to make a price. And so you think the number of hits that a particular site has received is a competitive activity? Yes, I do. And I'm a blogger myself and I dearly appreciate the fact that I compete with other bloggers to get a maximum number of hits. But again, this was not something that was known at the time. This is an infringement that occurred after our patent was applied for. And if you look at the prior art. You don't think your patent is broadly preclusive when it reaches so far as to incorporate that kind of. Yes. Yes. But it's not broadly inclusive. Because it excludes just an enormous number, almost an infinite number of possible embodiments. Even those that would combine an auction and a competitive activity. So on this point of the prior art. I want to point out that the other side went to some length in a very large footnote toward the end of its brief. To say that earlier claims by our patentee have been rejected as being obvious over the prior art. Well, the fact is that the patent office has decided in inter-parties review this May that our claims are patentable, are non-obvious over the prior art that was submitted by the appellees in this case. So I think that although I don't want to conflate section 101 with section 103. It would be a very. Before it beat you to it. Well. Certainly though, to the extent that I am conflating the two. It is something I'm invited to do so by the Supreme Court that has focused on prior art as an issue in section 101 analysis. The typical case is someone comes in with an invention for a certain method. And the clever lawyer on the other side finds that Hammurabi did the same thing thousands of years ago. So prior art, not through my doing, but through the Supreme Court and through various accused infringers over the years has done that for us. And I think that we would result. We would obtain a very odd result if a claimed method or claimed system were found to be not obvious over the prior art and at the same time be so commonplace that it covers a vast swath of potential systems so that those systems would constitute a fundamental building block that we should not preempt. You're into your rebuttal time. Would you like to reserve it? I would, Your Honor. Thank you. Mr. Josepher. Good morning, and may it please the Court. Because everyone agrees the claims are directed to an abstract idea, the only question is whether they contain an inventive concept. And they do not because they just claim the combination of two abstractions, two longstanding business models, what I'd call the 72-ounce steak business model and an auction. So what I mean is that every time someone in a restaurant buys, say, a steak and if they consume it within a certain amount of time, they'll get a discounted or for free, that combines all of the elements except for the auction. The same is true of any incentive contract where I... ...to this invention, like how many times in the spec is it mentioned and how important is it? It's not at all. And so this would be, if you go to the spec, it confirms they're just adding the auction to that business model. It's not what the applicant even claims to be inventive. We know that first because every time this specification talks about, quote, the present invention, it always talks about a price-determining activity. It never uses the word auction or a synonym. The entire summary of the invention section never discusses auctions. There are two references to auctions that come later. And this would be on appendix... Well, one's in the background section, so I think it might technically come earlier, but... Well, when we get to the two references that I noticed, at least, about the combination of the two... Well, you're right, there's background discussion of auctions being priority. Right, it just mentions auctions. Right, as priority. The word auction only appears twice. Right, but the place where it discusses the combination, what it confirms is that that combination is not even what's alleged to be inventive because what it says, and this would be appendix page 17, column 4, starting at line 60, it says that the price-determining activity can be combined with, quote, any other way, end quote, of selling goods and services, with auctions being just one of those examples. And it then says, so that, for example, if there is an auction, then the buyer may be able to obtain a reduction of the auction price based on participation in a competitive activity. And that's also the bottom of appendix page 17 spilling on the top of appendix page 18. Now, the significance of that is that it shows that what's alleged to be inventive here was the price-determining activity, not putting it together with an auction as opposed to a retail sale or a wholesale sale or anything else. Isn't it possible that a claim that really, at heart, is just two abstract ideas sort of combined could nonetheless meet and survive Alice? Is that possible? At least in theory, if there was something inventive about how it was implemented. One of the abstract ideas was really inventive somehow. Yeah, if it's an abstract idea, then by definition, that's not good enough. But as the court explained, for example, in Internet Patents Against Active Video or Active Networks, what you're looking for is the how. Is there an inventive how these things are put together? Does the claim just broadly claim the combination of the two abstractions, which it does here? Or does it set forth a specific way of doing so that could be inventive? So if you take, for example, DDR Holdings. For example, as your only example. Keep going. Well, that is. I mean, what you had there was you had a business method that had been, a comparable business method had been used in brick-and-mortar stores. That was, for example, there's a kiosk in one store. Now, moving it onto the internet requires some inventiveness, because making it on the internet caused a problem we didn't have before, which is that when someone goes to that kiosk, they just leave me entirely and I'll never see them again. So. Do you agree DDR applies to both internet patents as well as computer networking? Basically, if the abstract idea is being used to improve the functioning of the computer, or the network, or the internet, then that would all qualify. Yeah, if you have any kind of computer-centric solution to a computer-centric problem. Then it would. All under DDR. I think so. I mean, I take the point that the court has indicated in, say, intellectual ventures and in DDR itself, it was talking about internet-centric problems. I personally, I wasn't reading that to be distinct from other computer-centric problems. But how close do you think we are to adapting the view expressed by Judge Mayer, I guess, for this court, and by the dissent in Bilski, that the 101 really is a device for separating technology and technological inventions from non-technological inventions? This is another way of saying, do you have an example of something that wouldn't satisfy Judge Mayer's test, but would satisfy our test? Well, in terms of our test, I assume that would include the buy-safe decision of this court, which does. This entire body of our decisions, if you can distill them down to a single test. Buy-safe does say that at step two, you're looking for an improvement in, I think it says, the physical realm, the realm of physical things, which I take to mean really good ideas are still abstract until they're reduced to some physical innovation. Now, because we're talking computers, we're talking tech in terms of anything that would be physical. But in this case, you don't. In this case, obviously, there's some hard questions out there in 101 land. In this case, you don't get to them, because everyone agrees it strikes an abstract idea, and there's just nothing innovative anywhere in these claims, physical or otherwise, technological or otherwise. And it gives rise to the internet patents problem in terms of overbreath, because the claims just say, take the one long-standing business method, add another long-standing business method, auctions, add conventional computer equipment, period. That's all the claims do broadly. There's no further limitation in the claims as to how you do that, which means two things. One, that even if there was something inventive about, even if there's a particularly clever, inventive way of combining these ideas, the patent is blissfully unaware of that. The patent doesn't disclose any difficulties in combining them, doesn't disclose any solutions to difficulties in combining them, and doesn't claim a particular way of combining them. It claims all ways of doing so. Do you think, then, that if the combination of these two abstract ideas does not give rise to patentable subject matter, that Google's system for charging a certain amount for their ads, based on both the auction and a combination of auction plus number of hits, is itself not patentable? Sounds like, given the test you've articulated, it's quite- I'm not calling Google's. Let's just say a hypothetical system. I mean, whatever the system is, I'm going to- whatever the system is, whether it's a client in this case or not, I mean, the answer is going to be that, in that context, is something alleged to be inventive? And in particular, as in DDR, is some new technology needed to make it work? You're going to be looking for, is there something inventive? And that's hard to answer totally in the abstract, because some of these things are really hard to do. And there may be technological innovation or other innovation that goes into figuring out how. But you're saying, you say, better be some kind of technological innovation. It isn't enough simply to say, it'd be a great idea if we were to modify the price generated by the auction by the number of hits that somebody has gotten. That sounds to me to be a classic abstract idea. And then the question is, how do you do it? That's the point of internet patents, is you can't just claim the concept of doing something. You've got to claim a particular innovative way of doing it. So yeah, it's hypothetical. I don't know the rest. But that certainly sounds right. I'm asking a little tiny real world question. I don't think any of you agree. I noted that you said price play purports to own several patents. And litigation related to those patents appears to be its primary business. But you didn't cite anything for that calumny. Yeah, that's why we stuck with the appears with, I think. I mean, we're here on a motion to dismiss on 12B6. So really, anything that's relevant is what you'd pull out of the complaint or the patent. So you put the appears in. I don't think it's really disputed. But we put the appears in because we don't have a record site for it. I mean, if we didn't think it was right, we wouldn't have put it in there, obviously. But it's not something that's legally relevant, which is why I put appears in and figured I'd leave it in without a site. Obviously, I wouldn't be there if I thought it was wrong. What exactly is the state of play right now before the PTO with respect to these patents? Thanks for asking. That's the other thing I meant to mention, especially in light of something that was said earlier. The PTO instituted CBMs on both of these patents for purposes of 101. This went through CBM? For each of these two patent certificates. The 917 patent is now finally dead, and all the claims are canceled. We put in a 28J letter on this because it came in after our briefing. But the PTO has now finally determined that all claims in the 917 patent are invalid. It's finally canceled the claims, and that's now preclusive. There's no further procedure to be had on that. In fact, they consented to that in the PTAB, so they canceled it. The 982, the CBM with respect to section 101, is still pending. It's been instituted, but it's still running through things in the natural course of business. When was that instituted? There's a time limit, I guess, on CBM reservations. Let me pull up our 28J letter very quickly. Here it is. Well, I guess, asking for the back end, do you happen to know when the time runs on that? I'm sorry. There have been no updates. Nothing has happened that I'm aware of, at least, since we put in our 28J letter in October. So. What effect does, if we were to defer this case, what effect does it have on that proceeding? It would effectively, with respect to the 982, I mean, after this court had finally determined the patent was to be invalid. Can they amend the claims in CBM somehow to continue? I'm going to say no. I mean, honestly, I don't know what they could try. In this context, there would be no basis for trying to amend the claims in the CBM. In theory, I'm not sure exactly what their options would be. But the thing is, and there's a pattern here on the PTO, the initial parent, these are division, these are continuations, the initial parent patent, when PTO examined those, that two of the claims involved the option combination. PTO found that was obvious as a matter of law. The 917, we've now got, that's now out. They've now done an institute at CBM on the 982. So every time PTO looks at any of these patents, I mean, the parent's gone, the divisional's gone, and now the 982 is what's left. So I assume that this court getting in front of PTAB, which obviously doesn't happen very often. PTAB oftentimes gets there quicker. This court doing it for PTAB, I assume PTAB will decide it doesn't need to do much more. Now, Mr. Henry, if I believe, I may have misunderstood him. I thought he had said that some of the claims, at least, had been confirmed. He must be referring to something other than the pending CBM as the 982. Because the pending CBM as the 982, I mean, the 917 is now officially dead. No question of that. The 982, there's a pending CBM that finds that all the claims are likely invalid under section 101. So he must be referring to a different proceeding involving prior art. But as to 101, what we have now is a preliminary determination they're likely invalid under 101. Do you have anything else? The court has no further questions. Very good. Thank you, Mr. Josepher. Mr. Daniels? Yes. Judge Bryson, what I meant to say was that the patent office in the covered business method post-grant review proceeding received a petition from the police here. And there was a 103 argument. In fact, two grounds under 103 were presented. And the patent office decided not to institute on either of those grounds. But the 101 is still pending. It is still pending. And certainly, the decision there to institute a post-grant review based on the 101 issue doesn't decide the case for this court or for our case. Well, a decision not to institute doesn't have any presidential value at all. That's right. Exactly. But do you happen to know what the deadline for the PTO's decision on the 101 issue is? There's a fixed period of time within which they have to ask to act. Yes. No, that's all right. It doesn't matter. We can find out. The decision not to institute came in May of 2015. So going back about six months would take us to December. So I would think it would be May of 2016 that we would expect a final decision from the patent office on that issue. If I could just address very briefly this question of combining the auction with the competitive activity, a number of prior art examples were cited by the other side and by the trial court. The Babe Ruth story, the stake. 72-ounce stake. What? Excuse me? 72-ounce stake. Yes, yes, yes. Which might be appropriate for Babe Ruth. But nowhere do they explain how they would combine that kind of competitive activity with an auction. And there's nothing about Babe Ruth flipping a coin or the 72-ounce stake that suggests an auction to it. And in fact, when they wanted to show on page 24 of their brief that it was worth to you to see me eat a 72-ounce stake, they said, no, no, no, no, no, no, no, no, no, no, no, no, no. Well, how about, since we're in the realm of baseball, how about a very common phenomenon, which is various teams are bidding for the services of a particular free agent. And one of the teams says, our bid is going to be $100 million over seven years. Even though that's lower than the bid by the Reds, we'll give you an extra million dollars for every home run you hit next year. Would that infringe your patent? No. Why not? For two reasons. But it's a combination of competitive activity and auction, right? I think that's solely an auction because the terms, in addition to the- Why isn't the number of home runs he hits a competitive activity? It's an auction. He gets an extra million dollars for every home run he hits. He's competing, in effect, against the pitchers to try to increase his sales. And I'll tell you why. Go ahead. Because the bidding of the auction is done by the team owners. The competitive activity is done by the baseball player. No, the team owners are going to lose money if he hits a home run. But the competitive activity, the competition, is being done by the baseball player, not by the baseball team, not by the owner. So in our claims, it is the prospective buyer who's doing both the bidding at the auction and the competitive activity. Also- I think your time is up, Mr. Daniels. Mr. Spricing, do you have a motion? I have no motion. No. OK. I think we need to move on. You've exceeded your time. I thank both counsel for the argument. The case is taken under submission.